# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

   *Plaintiff-Respondent,*

 vs.

EBUBE OTUONYE,

   *Defendant-Petitioner,*

Case No. 6:18-cr-10085-EFM
    6:22-cv-01101-EFM

## MEMORANDUM AND ORDER

Before the Court is pro se Defendant-Petitioner Ebube Otuonye's Motion to Vacate his conviction under 28 U.S.C. § 2255 (Docs. 142 and 162).[1]  In July 2019, Defendant was convicted on four counts for illicitly prescribing controlled medications in conspiracy with Dr. Steve Henson. Defendant now moves to vacate his sentence based on the alleged ineffective assistance of his trial counsel.  Based on the allegations in Defendant's Motion, the Court held an evidentiary hearing. The evidentiary hearing concluded on June 28, 2023, and the Court is now ready to decide

---

[1] The reason for listing two document numbers stems from this case's complicated procedural history, as explained further below.  Defendant filed his original Motion at Doc. 142 on his own, despite being represented by counsel at that time.  His counsel then filed Doc. 162, which supplemented the arguments in Doc. 142.  Throughout this case, the Court has procedurally and substantively treated both documents as one Motion—it will do so now as well.

Defendant's Motion. The Court grants Defendant's Motion as to Counts One and Two based on defense counsel's failure to object to Jury Instruction 16 and denies it as to Counts Three and Four because Defendant failed to show prejudice as to those Counts.

## I.    Factual and Procedural Background[2]

In July 2019, Defendant, a pharmacist, faced trial on four counts related to his filling prescriptions for Dr. Steven R. Henson out of Neighborhood Pharmacy ("Neighborhood"). Count One charged that he conspired with Dr. Henson to distribute and dispense prescription drugs outside the usual course of professional medical practice and without a legitimate medical purpose, in violation of 21 U.S.C. §§ 846 and 841(a)(1); Count Two charged that he distributed such substances, in violation of 21 U.S.C. § 841(a)(1); and Counts Three and Four charged that he defrauded the Medicare and Medicaid health care benefit programs, in violation of 18 U.S.C. § 1347.

Richard Paugh, a private practitioner, was appointed as Defendant's counsel through the Criminal Justice Act Panel. Paugh had never tried a criminal case in federal court. Neither had he ever litigated a case involving healthcare.

After a failed guilty plea, during which Paugh stated that he had not anticipated going to trial, the Court gave Defendant 90-day continuance to allow Paugh to prepare for trial. On July 15, 2019, a seven-day trial ensued wherein the Government called 23 witnesses, including three experts. Paugh did not call any witnesses except Defendant. He also limited his cross-examinations of the Government's witnesses, averaging roughly 1/10 the amount of time on cross

---

[2] The facts are taken from the case's docket and the evidence presented at the evidentiary hearing on June 27 and 28, 2023.

as the Government spent on direct.  He stated that his strategy at trial was to make Dr. Henson look like the big bad manipulator and to portray Defendant as an unwitting pawn.

Before the case was submitted to the jury, the parties submitted competing jury instructions to the Court.  Regarding the necessary elements to find Defendant guilty on Counts One and Two, Paugh proposed that the jury instruction require the jury to find that "defendant acted with the intent to distribute the controlled substance outside the usual course of professional practice and without a legitimate medical purpose[.]"  The parties agree that this language would have required the jury to find that Defendant either knowingly distributed controlled prescriptions not for a legitimate medical purpose or knowingly distributed controlled prescriptions outside the usual course of professional practice.  In other words, it would require the jury to find that Defendant possessed the scienter to commit the crime.

The Court rejected that instruction.  Instead, Jury Instruction 16 stated Defendant could be convicted "if the Government proves beyond a reasonable doubt that a prescription was knowingly dispensed or distributed (1) not for a legitimate medical purpose, or (2) outside the course of professional practice."  The parties agree that this instruction would have allowed Defendant to be convicted under 18 U.S.C. §841(a) either for (1) knowingly distributing controlled substances not for a legitimate purpose or (2) objectively distributing controlled prescriptions outside the course of professional practice.  Under the latter prong, Defendant's mens rea would be irrelevant. Despite having identified this issue in his proposed instruction, Paugh did not object to Jury Instruction 16.

Ultimately, the jury found Defendant guilty on each count.  In October 2019, the Court sentenced Defendant to 150 months incarceration for Counts One and Two, and 120 months incarceration for Counts Three and Four.  All this time was to run concurrently.

Defendant appealed his conviction to the Tenth Circuit.  On May 4, 2021, the court affirmed the jury's findings on all counts while noting Paugh's failure to preserve certain objections for appeal.[3]  Defendant's appellate counsel, however, did not raise Jury Instruction 16's lack of a mens rea requirement as an issue for the Tenth Circuit to consider.

Defendant filed the present Motion to Vacate under 28 U.S.C. § 2255 on April 25, 2022, claiming that he was entitled to a new trial because of Paugh's ineffective assistance of counsel ("IEC") in preparation for and during trial.  On June 3, 2022, the Court appointed a federal public defender for Defendant.  Soon afterward, Defendant requested to proceed pro se.  The Court granted that request, but not before his counsel filed their own memorandum in support of relief under § 2255 on his behalf.  That memorandum argued in part that Paugh had provided ineffective assistance of counsel by failing to object to Jury Instruction 16.  With Defendant's agreement, the previously appointed counsel continued to serve as standby counsel throughout the remainder of this case.

In his pro se status, Defendant submitted multiple—and repetitive—motions, nearly two hundred pages of briefing, and tried to subpoena 17 witnesses for the upcoming evidentiary hearing.  The issues argued by Defendant are far too numerous to list here with any brevity.  The essence of Defendant's arguments, however, was that Paugh had failed to investigate his case through hiring experts, reviewing the digital data, or interviewing witnesses.  Based on the allegations in Defendant's Motion, the Court scheduled an evidentiary hearing to allow Defendant to put on evidence in support of his Motion.

---

[3] *See United States v. Otuonye*, 995 F.3d 1191, 1205, 1208–09 (10th Cir. 2021).

-4-

That evidentiary hearing took place June 27 and 28, 2023.  After the Court quashed most of Defendant's subpoenas as irrelevant to his IEC claim, Defendant called only four witnesses: (1) Richard Paugh; (2) Ugo Otuonye, Defendant's brother; (3) Onye Ibeji, Defendant's sister; and (4) Udo Otuonye, Defendant's daughter.

Compared to Defendant's extensive briefing and innumerable factual allegations therein, the evidence produced at the hearing was slim.  For example, Paugh testified that prior to trial he reviewed the substantial amount of e-discovery in this case, totaling over 14 terabytes.  He also claimed to have hired an investigator, Mike Hays, to look into the Government's witnesses and claims.  Although Paugh did not contact any forensic expert to examine the electronic records, he testified that he asked five to seven pharmacy experts to testify at trial on Defendant's behalf. According to Paugh, all refused.[4]  He did not, however, interview Defendant's brother or sister in preparation for trial.

The sole exhibit admitted by Defendant into evidence was a chart showing the total number of controlled prescriptions issued by Henson in the state of Kansas.  It revealed that two other pharmacies had filled more prescriptions than Neighborhood during the conspiracy period, something Paugh had pointed out during the trial.

Defendant's standby counsel next questioned Paugh regarding Jury Instruction 16.  Paugh made clear that he not only identified the issue but also intended to object to the finalized jury instruction.  Paugh blamed his failure to object on inadvertence.  He admitted that he should have objected and that failure to do so was unreasonable.

---

[4] Defendant alleges that Paugh wrote a letter to Defendant's appellate counsel in which Paugh stated that no investigator had been used.  Although Defendant questioned Paugh about this letter at the evidentiary hearing, he never offered it into evidence.  Therefore, the Court cannot consider the contents of the letter.

Upon taking the stand, Ugo Otuonye testified as to his theory of the case, including his remarkable theory that Defendant's computer must have been hacked by an unknown perpetrator. His testimony was perhaps most memorable for Ugo blatantly directing Defendant as to which questions to ask. For her part, Onye Ibeji testified that family members had contributed approximately $27,000 of the funds that were found in Defendant's account. And Udo Otuonye testified that she remembered the 3:1 sign[5] being up in Defendant's shop when she was nine or ten, e., around 2011 and 2012. Defendant did not testify. He also declined to call another witness he had previously listed, Keyocoo Coleman, stating that he wanted to preserve her testimony for—in his mind, at least—the inevitable retrial.

## II.      Legal Standard

Under 28 U.S.C. § 2255(a),

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

According to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts,

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . . If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

---

[5] The 3:1 sign required persons filling prescriptions at Neighborhood to fill three non-controlled medications for every controlled medication. Both the Government and Defendant attached a great deal of importance to this sign during trial. However, as demonstrated below, it is irrelevant to the Court's present order.

The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[6]  The petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence.[7]  An evidentiary hearing is not necessary where a § 2255 motion contains factual allegations that are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[8]

### III.   Analysis

"The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea."[9]  The Supreme Court has created a two-prong test which a criminal defendant must meet to prevail on a claim for ineffective assistance of counsel.[10]  Under this test, "a petitioner must show (1) his counsel's representation was constitutionally deficient because it fell below an objective standard of reasonableness, and (2) the deficiency prejudiced the petitioner because it deprived him of the right

---

[6] 28 U.S.C. § 2255(b).

[7] *See Hatch v. Okla.*, 58 F.3d 1447, 1471 (10th Cir. 1995), *overruled in part on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001).

[8] *See id*. at 1472 (stating that "the allegations must be specific and particularized, not general or conclusory"); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that were merely conclusory in nature and without supporting factual averments).

[9] *Lee v. United States*, ---U.S.---, 137 S. Ct. 1958, 1964 (2017) (quoting *Lafler v. Cooper*, 566 U.S. 156, 165 (2012)).

[10] *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).

to a fair trial."[11]   Because the petitioner must meet both prongs of the test, "[a]n ineffective assistance claim may be resolved on either performance or prejudice grounds alone."[12]

Prevailing upon the first prong requires the petitioner to show that his counsel's performance fell "outside the wide range of professionally competent assistance."[13]   This is a "highly demanding" standard.[14]   The petitioner must show that his counsel's "strategic decisions must have been completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[15]   In assessing counsel's performance, courts must exercise a high level of deference because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[16] Furthermore, to avoid "the distorting effects of hindsight,"[17] courts must evaluate the decision from "the counsel's perspective at the time of the alleged error."[18]

To prevail on the second prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[19]   "A reasonable probability is a probability sufficient to undermine confidence in

---

[11] *United States v. McPherson*, 2022 WL 1044922, at *3 (D. Kan. 2022) (citing *Strickland*, 466 U.S. at 687–88).

[12] *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000); *see also McPherson*, 2022 WL 1044922, at *3 ("A failure to prove one of the *Strickland* prongs is dispositive to a petitioner's claim, and a court may dispose of either the first or second prong, whichever is easier to resolve.").

[13] *Strickland*, 466 U.S. at 690.

[14] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[15] *Fox*, 200 F.3d at 1296 (further citations and quotations omitted).

[16] *Strickland*, 466 U.S. at 690.

[17] *Id.* at 689.

[18] *McPherson*, 2022 WL 1044922, at *3 (citing *Edens v. Hannigan*, 7 F.3d 1109, 1114 (10th Cir. 1996)).

[19] *Strickland*, 466 U.S. at 694.

the outcome."[20]  As explained by the Supreme Court, "[t]he likelihood of a different result must be substantial, not just conceivable."[21]  The main inquiry here is "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[22]

### A.    Jury Instruction 16

The first issue argued by Defendant is whether his counsel was ineffective by failing to object to Jury Instruction 16.  This jury instruction described the requisite mens rea to convict Defendant on Counts I and II.  It required the Government to prove "beyond a reasonable doubt that a prescription was knowingly dispensed or distributed (1) not for a legitimate medical purpose, or (2) outside the usual course of professional practice."[23]  The parties agree that this instruction allowed Defendant to be convicted for either (1) *subjectively* knowing that he was distributing prescription not for a legitimate medical purpose or (2) distributing prescriptions *objectively* outside the usual course of professional practice.  The parties also agree that under the second prong, Defendant's mens rea was irrelevant.

### 1.    *Paugh's failure to object to Jury Instruction 16 was constitutionally deficient.*

Although Defendant initially affirmed that this instruction accurately reflected Tenth Circuit caselaw at the time of trial, a subsequent review of that caselaw reveals the opposite.  True, at the time of Defendant's appeal, the Tenth Circuit in *United States v. Khan*[24] held that "§ 841(a)(1) and § 1306.04(a) require the government to prove that a practitioner-defendant either:

---

[20] *Id.*

[21] *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

[22] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citation omitted).

[23] Doc. 84 at 32.

[24] 989 F.3d 806 (10th Cir. 2021), *cert. granted sub nom. Kahn v. United States*, 142 S. Ct. 457 (2021), *and vacated and remanded sub nom. Ruan v. United States*, 142 S. Ct. 2370 (2022).

(1) *subjectively* knew a prescription was issued not for a legitimate medical purpose; or (2) issued a prescription that was *objectively* not in the usual course of professional practice."[25]   And the parties agree that Jury Instruction 16 accurately reflects this standard.   However, *Khan* was not decided until 2021, whereas Defendant was convicted in 2019.

At the time of trial, the Tenth Circuit had not conclusively ruled on the mens rea required to convict a defendant under § 841(a)(1).  Although the Government cites *United States v. Nelson*[26] as determinative of the appropriate mens rea standard in the Tenth Circuit, closer examination exposes that this is a mischaracterization of that opinion.  The *Nelson* court did not examine the scienter requirement within 21 U.S.C. § 841(a)(1).  Instead, *Nelson* merely stated a defendant could be found guilty for either issuing a prescription without a legitimate medical purpose *or* not in the usual course of professional practice.[27]  Whether the term knowingly applied to both prongs was not at issue.[28]

No further guidance on this issue came about in the Tenth Circuit until *United States v. Schneider*.[29]   There, the defendant argued that the proper mens rea requirement under § 841 required the Government to prove that he acted knowingly regardless of which prong applied.[30]  The jury instructions examined by the Tenth Circuit, however, expressly required the jury to

---

[25] *Id.* at 825 (emphasis added).

[26] 383 F.3d 1227 (10th Cir. 2004).

[27] *Id.* at 1231–32.

[28] Indeed, the jury instruction at issue in *Nelson* appears to have included the very scienter requirement that Paugh proposed at trial.  *See id.* at 1231 (noting that instruction requirement the Government to "prove that the Defendant knowingly and deliberately arrived at some type of agreement and understanding with another that they would distribute prescription drugs outside the usual course of medical practice or without legitimate medical purpose") (emphasis omitted).

[29] 704 F.3d 1287 (10th Cir. 2013).

[30] *Id.* at 1294.

consider the defendant's intent regardless of which of the prongs it convicted him under.[31]  Given that defendant's argument failed on its face, the Tenth Circuit determined that it "need not decide any mens rea requirement under § 841(a)(1); we only hold that the [defendants'] challenge is without merit."[32]

Thus, at the time of Defendant's trial, the Tenth Circuit had not ruled on the appropriate mens rea requirement to convict a defendant under § 841(a)(1).  In contrast, the First, Fifth, Seventh, and Ninth Circuits required subjective intent for violating § 841.[33]  The Second, Fourth, and Sixth Circuits mixed consideration of § 841's elements with the good faith defense,[34] an issue notably absent from the present case.  The Eleventh Circuit appears to stand alone in holding that a defendant could be convicted based solely on objective criteria prior to July 2019.[35]

---

[31] *Id.* at 1295 ("We think the same is true here—the jury considered Dr. Schneider's intent. In other words, Dr. Schneider's argument is without merit because the jury, on the instructions given, found that he knowingly acted not for a legitimate medical purpose or not within the usual course of professional practice.").

[32] *Id.*  In a concurring opinion, Judge Holmes went on to examine the difference between a subjective and objective standard of the good faith exception to conviction under § 841. *See id.* at 1302–04 (Holmes, J., concurring). While the *Khan* court relied on this concurrence, *Ruan*, *Kahn*, and *Henson* all made clear that the improperly termed jury instruction regarding the two prongs under § 841 alone was erroneous—improper good faith instructions were treated as a separate, independent issue.  Here, the good faith instruction is not at issue before this Court.  Therefore, Judge Holmes' concurrence is irrelevant.

[33] *United States v. Sabean*, 885 F.3d 27, 45 (1st Cir. 2018) ("[A] physician's failure to adhere to an applicable standard of care cannot, by itself, form the basis for a conviction under Section 841(a)."); *United States v. Norris*, 780 F.2d 1207, 1209 (5th Cir. 1986) ("To convict Dr. Norris of violating 21 U.S.C. § 841(a)(1), the government was required to prove "(1) that he distributed or dispensed a controlled substance, (2) that he acted knowingly and intentionally, and (3) that he did so other than for a legitimate medical purpose and in the usual course of his professional practice."); *United States v. Kohli*, 847 F.3d 483, 489 (7th Cir. 2017) ("To convict a prescribing physician under § 841(a) of the Controlled Substances Act, the government must prove that the physician knowingly prescribed a controlled substance outside the usual course of professional medical practice and without a legitimate medical purpose."); *United States v. Feingold*, 454 F.3d 1001, 1008 (9th Cir. 2006) (holding that the government must prove that the defendant acted "with intent to distribute drugs outside the course of professional practice").

[34] *See United States v. Vamos*, 797 F.2d 1146 (2d Cir. 1986); *United States v. Volkman*, 797 F.3d 377, 387 (6th Cir. 2015); *United States v. Hurwitz*, 459 F.3d 463, 475 (4th Cir. 2006).

[35] *See United States v. Joseph*, 709 F.3d 1082, 1097 (11th Cir. 2013) ("[W]hether a defendant acts in the usual course of his professional practice must be evaluated based on an objective standard, not a subjective standard.").

-11-

Supreme Court precedent, however, had consistently strengthened the concept that "our criminal law seeks to punish the vicious will."[36]  In 2015, the Supreme Court reaffirmed its fundamental "rule of construction [that] reflects the basic principle that wrongdoing must be conscious to be criminal."[37]  The Court stated that "[a]lthough there are exceptions, the general rule" is that a guilty mind is "a necessary element in the indictment and proof of every crime."[38] "We therefore generally 'interpret [ ] criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them.' "[39]

Similarly, in June 2019, the Supreme Court decided *Rehaif v. United States*,[40] in which it declared that "[t]he cases in which we have emphasized scienter's importance in separating wrongful from innocent acts are legion."[41]  At issue in *Rehaif* was 18 U.S.C. § 924, which authorized up to 10 years in prison for " '[w]hoever knowingly violates certain subsections of § 922.' "[42]  The Court noted "[a]s a matter of ordinary English grammar, we normally read the statutory term knowingly as applying to all the subsequently listed elements of the crime."[43] Furthermore, the Court recognized that it had "interpreted statutes to include a scienter requirement even where 'the most grammatical reading of the statute' does not support one"[44] because of the

---

[36] *Ruan v. United States*, 142 S. Ct. 2370, 2376 (2022) (beginning a summary of caselaw regarding requisite mens rea for criminal convictions) (further citations and quotations omitted).

[37] *Elonis v. United States*, 575 U.S. 723, 734 (2015) (further citation and quotations omitted).

[38] *Id.* (further citation and quotations omitted).

[39] *Id.* (quoting *United States v. X–Citement Video, Inc.*, 513 U.S. 64, 70 (1994) (alterations in original).

[40] 139 S. Ct. 2191 (2019).

[41] *Id.* at 2196.

[42] *Id.* (quoting 18 U.S.C. § 924(a)(2)).

[43] *Id.* (further citations and quotations omitted).

[44] *Id.* at 2197 (quoting *X-Citement Video*, 513 U.S. at 70).

importance of punishing "a vicious will."[45]  But since the statute included the term "knowingly" as applied to the elements of the claim without distinction, the Court had no issue in determining that the Government had to prove the defendant knowingly committed each element.[46]  Besides, the narrow exception to the presumption of scienter—that is provisions that are "part of a regulatory or public welfare program" and do not carry "harsh" potential penalties—did not apply.[47]  Therefore, the Supreme Court reaffirmed that scienter was absolutely necessary to convict a criminal defendant under § 924.[48]

To summarize the state of the law at the time of Defendant's trial: (1) no Tenth Circuit law had held that a defendant could be convicted under § 841(a)(1) based solely on objective criteria; (2) the overwhelming majority of circuits required the Government to prove that the defendant acted "intentionally or knowingly"; (3) the Supreme Court had recently issued a decision driving home the necessity that most criminal convictions require scienter, i.e., a subjective mental state. It was not until nearly two years after Defendant's conviction that the Tenth Circuit affirmatively ruled that the defendant could be convicted under § 841 for objectively issuing controlled prescriptions outside the usual course of profession practice.[49]  Clearly, the current state of caselaw heavily favored Paugh's proffered instruction.

The Government argues primarily that the Tenth Circuit has consistently rejected IAC claims based on defense counsel "failing to predict future law."[50]  This is because courts "must

---

[45] *Id.* at 2196 (quoting 4 W. Blackstone, *Commentaries on the Laws of England* 21 (1769)).

[46] *Id.* at 2197 (further citation and quotations omitted).

[47] *Id.* (further citation and quotations omitted).

[48] *Id.*

[49] *See Khan*, 989 F.3d at 825.

[50] *Bullock v. Carver*, 297 F.3d 1036, 1052 (10th Cir. 2002) (further citation and quotations omitted).

make every effort 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' " [51]   Accordingly, "counsel [is] not ineffective in failing to make arguments based on Supreme Court decisions filed after the trial court had ruled on his motion."[52]   This argument misses the point.

The issue here is *not* whether defense counsel failed to predict future law.  If anything, Paugh did predict the future law and he submitted a proposed jury instruction including that prediction.  Furthermore, that prediction was not contrary to existing Tenth Circuit precedent, but rather made in the absence of on point Tenth Circuit caselaw.  And it was supported by the clear weight of the law and recent Supreme Court decisions emphasizing the necessity of scienter for criminal convictions with hefty penalties.

Thus, the issue here becomes where failing to object to the Court's ruling on an *identified* legal issue—a ruling contrary to the weight of most circuits and Supreme Court authority that if successful on appeal could overturn a defendant's conviction—falls outside the wide range of professionally competent assistance.  In this case, Paugh admitted that it does.  Based on this admission, the Court agrees that Paugh's failure to object bore no relationship to any possible defense strategy.  Thus, Paugh's failure to object was unreasonable and outside the scope of effective assistance of counsel. Accordingly, Defendant has established the first *Strickland* prong for his IEC claim as to Jury Instruction 16.

---

[51] *Id.* (quoting *Strickland*, 466 U.S. at 689).

[52] *United States v. Jacquez*, 412 F. App'x. 151, 154 (10th Cir. 2011); *see also Khan*, 989 F.3d at 825.

2.      *Paugh's failure to object to Jury Instruction 16 prejudiced Defendant.*

Under *Strickland*'s second prong, Defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[53]  Even though this is undoubtedly a difficult burden for any defendant to carry, the unique circumstances of this case enable the Court to find that Defendant has met his burden.

This conclusion stems from the unparalleled similarity between this case and that of Dr. Henson, Defendant's coconspirator.  Like Defendant, Dr. Henson was convicted after a jury trial under § 841(a)(1).  In fact, the jury instruction for those counts was identical to Jury Instruction 16.  Dr. Henson's counsel, however objected to that identical instruction, an objection which was overruled by the district court.  His counsel then appealed that ruling to the Tenth Circuit.[54]  The Tenth Circuit, relying on *Khan*, denied the appeal.[55]  Dr. Henson then petitioned for a writ of certiorari.

Shortly after, *Khan* was overturned by the Supreme Court in *Ruan v. United States*.[56]  In *Ruan*, the Supreme Court unequivocally held that the "the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner" to convict a defendant under § 841(a).[57]  Relying on its precedent in *Rehaif*, the Supreme Court reiterated "as a general matter, our criminal law seeks to punish the 'vicious will.' "[58]  Therefore,

---

[53] *Strickland*, 466 U.S. at 694.

[54] *See United States v. Henson*, 9 F.4th 1258, 1298–99 (10th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2902 (2022).

[55] *Id.* at 1299.

[56] 142 S. Ct. 2370 (2022).

[57] *Id.* at 2382.

[58] *Id.* at 2376 (further citations and quotations omitted).

"[w]ith few exceptions, wrongdoing must be conscious to be criminal."[59]  It held that when a statute includes a general scienter requirement, like § 841, Congress is strongly presumed to intend that the defendant possess a culpable state of mind.[60]  Accordingly, the Tenth and Eleventh Circuits' standard that allowed a defendant to be convicted under § 841 based on objective criteria was improper.[61]  The Supreme Court remanded the case to the Tenth Circuit, which subsequently found that failure to include the correct mens rea element in the jury instruction when the defendant's intent was disputed during the trial was not harmless error.[62]  The court vacated the defendant's conviction and remanded for a new trial.[63]

After deciding *Ruan*, the Supreme Court granted Dr. Henson's petition for certiorari.[64]  In an opinion without analysis, the Supreme Court vacated Dr. Henson's convictions and remanded his case to the Tenth Circuit for consideration under *Ruan*.[65]  On remand, the Tenth Circuit vacated Dr. Henson's convictions on all but two counts because of the improper jury instruction regarding the mens rea required to convict Dr. Henson under § 841(a).[66]

It is rare to have such a perfectly analogous example of what likely would have happened had counsel not been deficient.  While it is not *certain* that Defendant would have appealed the

---

[59] *Id.*

[60] *Id.* at 2377

[61] *See id.* at 2382; *see also Morissette v. United States*, 342 U.S. 246, 250 (1952) ("The purpose and obvious effect of doing away with the requirement of a guilty intent is to ease the prosecution's path to conviction, to strip the defendant of such benefit as he derived at common law from innocence of evil purpose, and to circumscribe the freedom heretofore allowed juries.").

[62] *See United States v. Kahn*, 58 F.4th 1308, 1320–21 (10th Cir. 2023).

[63] *Id.* at 1322.

[64] *Henson*, 142 S. Ct. at  2902.

[65] *Id.*

[66] *See United States v. Henson*, 2023 WL 2319289, at *1–2 (10th Cir. 2023).

-16-

issue to the Tenth Circuit and the Supreme Court and had his convictions vacated after *Ruan*, the fact remains that his coconspirator did exactly that with perfect success.  The Court may reasonably suppose that the Supreme Court, in light of *Ruan*, probably would have granted the writ of certiorari and vacated Defendant's conviction as to Counts I and II—just like Dr. Henson.  Therefore, there is a reasonable probability that the outcome would have been different had defense counsel preserved the issue by objecting to Jury Instruction 16.

Briefly, the Government argues that even if incorrect, Jury Instruction 16 would be subject to a harmless error analysis.  However, in *United States v. Kahn*,[67] the Tenth Circuit concluded that failing to include the proper jury instruction as to the defendant's mens rea when his mental state was at issue during the trial was not harmless error.[68]  The same logic applies here.  Defendant's mental state was hotly contested at trial—thus, a conviction under Jury Instruction 16 did not result in harmless error.  Accordingly, Defendant's Motion is granted as to Counts One and Two.  The judgment of the Court (Doc. 103) is hereby vacated as to these Counts, and the jury's finding of Defendant's guilt as to Counts One and Two is set aside.

**B.    Failure to investigate in relation to Counts Three and Four.**

Because the Court grants Defendant's Motion as to Counts One and Two, his remaining arguments are only relevant to the extent they pertain to Counts Three and Four—defrauding the Medicare and Medicaid health care benefit programs, in violation of 18 U.S.C. § 1347.  Defendant, however, never made any argument about these Counts in any of his briefing.  This alone is sufficient to deny Defendant's Motion as to these Counts.

---

[67] 58 F.4th 1308 (10th Cir. 2023).

[68] *Id.* at 1320–21; *see also Leary v. United States*, 395 U.S. 6, 31–32 (1969) ("It [h]as long been settled that when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside.").

To the extent that Defendant claims Paugh's failure to investigate, hire experts, or interview witnesses was constitutionally deficient and affected these counts, he failed to produce evidence showing either unreasonable action or prejudice.  In contrast to Defendant's allegations, Paugh testified that he hired an investigator, contacted five to seven pharmacists, and reviewed the extensive computer data in this case to prepare for trial.  And Defendant's brother testified that he provided additional evidence and summary charts to Paugh, meaning that Paugh would have had access to this evidence.  Choosing not to use it was, according to Paugh, a strategic decision in line with his defense strategy of painting Dr. Henson as the manipulator and Defendant as the unwitting accomplice.  Defendant offered no reason at the evidentiary hearing that Paugh's strategic decision fell outside the wide range of acceptable conduct.  Therefore, the Court cannot find that Paugh's conduct was completely unreasonable as required to prevail on *Strickland*'s first prong.

Furthermore, Defendant bears the burden to show that there is a reasonable probability that but for Paugh's performance, the result as to Counts Three and Four would have been different. Defendant, however, put on no evidence of prejudice as to these Counts whatsoever.  Rather, the scant testimony presented went to Defendant's theory of the case, such as that his computer had been hacked, Defendant's family had provided roughly a quarter of the "mysterious funds" in his account, and the sign had existed long before the conspiracy.  But Defendant never relates these facts to Counts Three and Four, much less showing that his convictions on these counts probably would not have happened.  Thus, Defendant has failed to show prejudice.  The Court cannot grant Defendant's Motion as to Counts Three and Four.

## IV.    Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the petitioner.  A

court may only grant a COA "if the applicant has made a substantial showing of the denial of a constitutional right."[69]   A petitioner satisfies this burden if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[70]  Based on the scant evidence presented at the evidentiary hearing, no reasonable jurist could find or even debate that Defendant showed the denial of a constitutional right with regard to Counts Three and Four. Therefore, the Court declines to grant a COA regarding the denial of Defendant's Motion as to these Counts.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Vacate (Docs. 142 and 162) is **GRANTED in part** and **DENIED in part.**  The judgment of the Court (Doc. 103) is hereby vacated as to Counts One and Two, and the jury's finding of Defendant's guilt as to Counts One and Two is set aside.  Counts Three and Four remain unchanged.

**IT IS SO ORDERED.**

Dated this 11th day of July, 2023.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[69] 28 U.S.C. § 2253(c)(2).  The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issue a COA. See 28 U.S.C. § 2253(c)(1).

[70] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).