IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff-Respondent,*

vs.

           Case No. 6:18-cr-10085-EFM
                    6:22-cv-01101-EFM

EBUBE OTUONYE,

    *Defendant-Petitioner,*

**MEMORANDUM AND ORDER**

Before the Court are cross Motions for Reconsideration from pro se Defendant-Petitioner Ebube Otuonye and his standby counsel (Doc. 244) and the Government (Doc. 247). In July 2019, Defendant was convicted on four counts for illicitly prescribing controlled medications in conspiracy with Dr. Steve Henson. Defendant moved to vacate his conviction under 28 U.S.C. § 2255, alleging the ineffective assistance of his trial counsel. The Court held an evidentiary hearing to decide Defendant's Motion, which concluded on June 28, 2023. After the hearing, the Court granted Defendant's Motion as to Counts I and II based on the failure of Richard Paugh, Defendant's trial counsel, to object to Jury Instruction 16. The Court denied Defendant's motion to vacate as to Counts III and IV because Defendant failed to show prejudice as to those Counts.

Now, Defendant seeks reconsideration of the Court's ruling as to Counts I and II and the Government seeks reconsideration as to Counts III and IV. But the Court remains convinced of its original analysis, unless and until the Tenth Circuit or Supreme Court deem otherwise. Therefore, the Court denies both Motions.

## I. Factual and Procedural Background[1]

The facts and procedural posture of this case are contained within this Court's previous order (Doc. 242) granting in part and denying in part Defendant's motion to vacate. They do not need repeating here.

Given that the Court granted Defendant's motion to vacate in part, the Court held a status conference to determine the next steps and set a date to re-sentence Defendant taking into consideration his adjusted offense level. Before the status conference occurred, Defendant filed his present Motion with supplemental briefing by his standby counsel. At the status conference, the Government indicated that it would also be filing a Motion for Reconsideration, a promise promptly fulfilled. Because of these pending Motions, the Court concluded it could not set a date to re-sentence Defendant. Both Motions have been fully briefed and are now ripe for consideration.

## II. Legal Standard

The Court has discretion in granting a motion to reconsider.[2] The Federal Rules of Civil Procedure do not formally recognize a "motion to reconsider."[3] Instead, a post-judgment motion

---

[1] The facts are taken from the case's docket and the evidence presented at the evidentiary hearing on June 27 and 28, 2023.

[2] *See Hancock v. City of Okla. City*, 857 F.2d 1394, 1395 (10th Cir. 1988).

[3] *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).

to reconsider "may arise under either Rule 59(e) (motion to alter or amend the judgment) or Rule 60(b) (relief from judgment for mistake or other reason)," although the rules are not interchangeable.[4]  A motion for reconsideration under Rule 59(e) "gives the court the opportunity to correct manifest errors of law or fact and to review newly discovered evidence."[5]  The court should alter or amend its judgment where the court has misapprehended the facts, the parties' positions, or the controlling law.[6]  Local Rule 7.3 further restricts this requirement, requiring motions to reconsider to be based on "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice."[7]  "A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed."[8]  Such motions are not appropriate if the movant only wants the Court to revisit issues already addressed or to hear new arguments or supporting facts that could have been presented originally.[9]

### III.    Analysis

**A.    The Court denies Defendant's Motion.**

The Court will first address Defendant's Motion regarding Counts III and IV.  As noted by the Court in its previous order, Defendant never made any substantive argument about these Counts in his briefing.  Nor did he put on evidence specifically relevant to these Counts at the

---

[4] *Jennings v. Rivers*, 394 F.3d 850, 854 (10th Cir. 2005) (citation omitted) (internal quotation marks omitted).

[5] *Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan. 1994) (citing *Committee for the First Amend. v. Campbell*, 962 F.2d 1517, 1523 (10th Cir.1992)).

[6] *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (internal quotation marks omitted) (citation omitted).

[7] D. Kan. R. 7.3.

[8] *Voelkel*, 846 F. Supp. at 1483.

[9] *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).

evidentiary hearing. This alone is enough to deny Defendant's Motion, as a motion for reconsideration is an improper place to assert arguments for the first time.

Even if the Court were to entertain Defendant's substantive arguments, they fail because they do not take into account the distinct and separate jury instructions issued as to Counts III and IV. Contrary to Defendant's contention, the jury instructions in this case make clear that Counts III and IV were *not* parasitic on Counts One and Two.

First, Jury Instruction 5 stated:

> A separate crime is charged in each count of the indictment. Each count and the evidence pertaining to it should be considered separately. The fact that you may find the defendant guilty or not guilty as to one of the crimes charged should not control your verdict as to any other crimes charged. Your verdict with respect to each count of the indictment must be unanimous.

Second, Jury Instruction 16 dealt specifically with Counts I and II. It did not purport to relate to Counts III and IV. Instead, it was Jury Instruction 18 which listed the elements for these Counts. Among those elements, the jury had to find that Defendant "acted with the specific intent to defraud." Thus, Counts III and IV had a separate and distinct mens rea requirement not predicated in any way on Jury Instruction 16.

The reason for granting Defendant's original motion to vacate is that Jury Instruction 16 tainted the jury's ability to find that Defendant acted with the necessary mens rea to convict him for Counts I and II. Including an element explicitly requiring the jury to find Defendant acted with specific intent—i.e., the proper mens rea—to be convicted for Counts III and IV alleviates the concerns raised by Jury Instruction 16.

Defendant does not explain how Jury Instruction 16 improperly influenced the jury's application of Jury Instruction 18. He points to several instances in the record where the Government explained that it relied on the *same evidence* to prove each of the Counts. This is

irrelevant to whether the jury relied on the *same instructions* in determining Defendant's guilt on each Count. And the Court instructed the jury to separately consider each alleged Count without reference to the others.[10] The Court is mindful that "[j]urors are presumed to follow the judge's instructions."[11] Accordingly, Defendant cannot establish that the improper Jury Instruction 16 prejudiced his case with regard to Counts III and IV. Defendant's Motion is denied.

## B.   The Court denies the Government's Motion.

The Government seeks reconsideration of the Court's decision to grant Defendant's motion to vacate as to Counts I and II. The Government argues that the Court both misapprehended the facts and committed clear error in its prior order. Because the Court remains convinced of its prior decision, it denies the Government's Motion.

*1.   The Court did not misapprehend the facts by allowing Defendant to rely on circumstantial evidence of Defendant's appellate counsel's strategy.*

First, the Government claims this Court misapprehended the facts by not requiring Defendant to produce direct evidence of the "intervening and independent strategic appellate decisions of Defendant's appellate counsel, Michael Kimerer." Without Defendant or Kimerer testifying at the evidentiary hearing as to Kimerer's appellate strategy, the Government claims the Court has no evidentiary basis for its ruling. The Government characterizes this Court's prior order as "presuming" Kimerer's strategy on appeal and usurping Defendant's burden to affirmatively show prejudice.

---

[10] Partially for this reason, the Court may not import the jury's finding of Defendant's scienter as to Counts III and IV to Counts I and II.

[11] *United States v. Phillips*, 71 F.4th 817, 827 (10th Cir. 2023) (further citation and quotations omitted).

The Court observes that Kimerer died on June 15, 2023.[12] Therefore, it would have been impossible for Defendant to have elicited testimony from him at the hearing on June 26 and 27. Of course, Defendant could have testified as to the strategy he and his counsel were pursuing on appeal. He chose not to, making this Court's analysis significantly more difficult. Nevertheless, the Court is unconvinced that Defendant wholly abandoned his burden to show prejudice. Rather, Defendant relied on empirical and circumstantial evidence to show that but for Paugh's decision there was a reasonable probability the result would have been different. There is no substantive error in relying on circumstantial or empirical evidence instead of direct evidence. Even the jury instructions proposed by the Government recognize that fact.[13] Therefore, the Court did not misapprehend the facts when it relied on the empirical evidence presented by Defendant in concluding that Defendant had met his burden as to Counts I and II.

2. *The Court did not commit clear error by inferring Kimerer's appellate strategy from the evidence.*

The Government also contends that Kimerer could have asserted that Paugh's failure to object to Jury Instruction 16 was plain error. If so, then Kimerer's decision not to argue plain error could have been a strategic one. Plain error review, however, has additional standards beyond the substantive merits of argument. Specifically, an appellant must show: "(1) an error, (2) that is plain, which means clear or obvious under *current law*, and (3) that affects substantial rights."[14]

---

[12] *See Michael Daniel Kimerer*, Arizona Republic, (June 19, 2023) https://www.azcentral.com/obituaries/par070336 (detailing Kimerer's work as a defense attorney with Kimerer Law Group, P.C., and stating he died on June 15, 2023)

[13] *See* Doc. 68 at 27 (showing the Government's proposed jury instructions).

[14] *United States v. Garcia*, 946 F.3d 1191, 1201–02 (10th Cir. 2020) (further citations and quotations omitted) (emphasis added).

For an error to be clear or obvious under current law, it must be "contrary to well-settled law."[15] "And in general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue."[16]

Contrary to the Government's assertion in its Motion, Defendant—through his standby counsel—offered an explanation at the evidentiary hearing as to why Kimerer did not argue plain error on review. Once again, a thorough understanding of this case's timeline is vital to comprehending this point. At the time of Defendant's appeal, the Tenth Circuit had ruled in *United States v. Khan*[17] that a defendant could be convicted for objectively distributing medications outside the course of normal practice regardless of his mental state. Therefore, *under the current law at the time of Defendant's appeal*, Jury Instruction 16 was proper. As such, it would have been truly impossible for Kimerer to show that Paugh's failure to object was clear and obvious under then-binding Tenth Circuit precedent. To assert otherwise under a plain error review would be tantamount to begging for sanctions due to frivolous arguments. Thus, Kimerer's "decision" to not argue plain error would have stemmed from necessity rather than strategy.

The Court does not presume Kimerer's strategy in this case. Rather, it employs logic and empirical evidence to identify Kimerer's likely strategical decisions. The Court may also consider the empirical evidence of Dr. Henson's success on appeal after his counsel preserved an objection to an instruction identical to Jury Instruction 16. Based on these facts, the Court concludes that Defendant has sufficiently shown a reasonable probability that his conviction would have been

---

[15] *Id.* (further citations and quotations omitted).

[16] *Id.* (further citations, quotations, and alterations omitted).

[17] 989 F.3d 806 (10th Cir. 2021), *cert. granted sub nom. Kahn v. United States*, 142 S. Ct. 457 (2021), *and vacated and remanded sub nom. Ruan v. United States*, 142 S. Ct. 2370 (2022).

overturned but for Paugh's failure to object to Jury Instruction 16. Finding the same in its prior Order was not clear error. Accordingly, the Court denies the Government's Motion on this ground.

3. *The Court did not misapprehend the state of Tenth Circuit caselaw at the time of trial.*

As an alternative ground for reconsideration, the Government argues that the Court misapprehended the Tenth Circuit's holding in *United States v. Nelson*.[18] Specifically, it argues that the Tenth Circuit in *Khan* retroactively characterizes the *Nelson* decision as stating that a defendant could be convicted under 21 U.S.C. § 841(a)(1) without any finding as to a defendant's mens rea.

The Government does not analyze *Nelson* to show how it is at odds with this Court's reading as set forth in the prior order. Neither does the Government analyze *Khan*, the case the Government relies on for its characterization of *Nelson* as relevant to any mens rea standard. *Khan*, however, does not support what the Government suggests. In *Khan*, the Tenth Circuit stated:

> We hold that § 841(a)(1) and § 1306.04(a) require the government to prove that a practitioner-defendant either: (1) subjectively knew a prescription was issued not for a legitimate medical purpose; or (2) issued a prescription that was objectively not in the usual course of professional practice. As we held in *Nelson*, the government need only prove criminal liability under one of those two prongs.[19]

This is the only time the *Khan* panel mentioned *Nelson* in the context of discussing the necessary mens rea to convict a criminal defendant under § 841(a)(1). Tellingly, when distinguishing the two prongs' respective mens rea requirements with "subjectively" and "objectively," the Tenth Circuit used the present tense—"[w]e hold." This indicates the Tenth Circuit's then-present intent to state a new rule of law or legal interpretation.

---

[18] 383 F.3d 1227 (10th Cir. 2004).

[19] *Khan*, 989 F.3d at 825.

When referencing *Nelson*—"we held"—the Tenth Circuit simply acknowledged the point this Court made in its prior order. That is, *Nelson* held a defendant could be found guilty for issuing a prescription *either* without a legitimate medical purpose *or* not in the usual course of professional practice. In other words, the Government did not need to prove both.

In reaching this conclusion, the *Nelson* panel did not discuss the requisite scienter for conviction under § 841(a)(1). And the *Khan* panel did not claim otherwise. Rather, it stated a new rule of law that built on *Nelson*'s foundation.[20]

Here, the Government offers no reason for the Court to reconsider its ruling except statements by the parties—and the Court, then taking the parties at their word—which are clearly inaccurate in the light of this Court's recent analysis. When a party or this Court misstates the law, it is not clear error to correct that mistake. Nor has the Government given this Court a reason to believe that it misapprehended the facts when ruling on Defendant's motion to vacate. Rather, it remains clear that this case mirrors that of *United States v. Demeree*,[21] where the Tenth Circuit held that trial counsel "was ineffective for failing to request a [certain jury] instruction" in light of "the circuit split and our silence."[22] Thus, the Government's Motion is denied on this ground.

   *4. The Court did not rely on any retroactivity argument in reaching its decision.*

In its penultimate argument for reconsideration, the Government claims that Defendant led this Court into clear error by applying "a blatant 'retroactivity' argument" in granting Defendant's

---

[20] As the Court referenced in its prior order, the Tenth Circuit in *United States v. Schneider*, expressly held that it "need not decide any mens rea requirement under § 841(a)(1)." 704 F.3d 1287, 1295 (10th Cir. 2013). This statement would have been unnecessary and illogical had the *Schneider* panel considered *Nelson* to already have determined the necessary mens rea requirement for convictions under § 841(a)(1).

[21] 108 Fed. App'x 602 (10th Cir. 2004).

[22] *Id.* at 605.

motion to vacate.[23] The Government's argument does not reference the Court's actual order, only the defendant's briefs and oral arguments.

Nowhere did the Court use the term "retroactivity" or rely on anything of the sort in its order. The Government did not and cannot claim to the contrary. Instead, the Court used the framework under 28 U.S.C. § 2255(a) and the *Strickland* analysis to arrive at its decision. The Government's Motion is denied as to this ground.

*5.     The Court will not consider the Government's futility exception argument because it is raised in a perfunctory manner for the first time in a motion for reconsideration.*

Finally, the Government argues—primarily in a footnote—that Defendant failed to explain why the futility exception under Tenth Circuit caselaw does not apply here. Throughout this case, however, the Government has acknowledged that Paugh's failure to object to Jury Instruction 16 meant the issue was not preserved for appeal. Furthermore, this futility exception argument does not respond to any of Defendant's later-raised arguments or positions. Thus, the Court may disregard the Government's new argument as improperly raised for the first time in a motion for reconsideration.

Similarly, the Tenth Circuit has decreed that "[a]rguments raised in a perfunctory manner, such as in a footnote, are waived."[24] Although the Government mentions the "futility exception" in the body of its Motion, it restricts any argument or analysis of the exception to a footnote—a classic example of a perfunctory argument. By raising this argument in such a perfunctory manner,

---

[23] The Government characterizes Defendant's retroactivity argument, first brought in his present Motion, as follows: "While wearing the dress of an equity-based argument, this is clearly an invitation to the retroactivity ball." Although the Court ultimately disagrees with the thrust of the Government's position, it must admit—that's a great sentence.

[24] *Pharm. Care Mgmt. Ass'n v. Mulready*, --- F.4th ---, 2023 WL 5218138 (10th Cir. 2023) (further citations and quotations omitted).

the Court may assume that the Government waives any position regarding the futility exception. Accordingly, the Court will not consider the futility exception in ruling on the Government's Motion. The Government's Motion is denied.

    6.  *The Court herein provides the Government's requested clarification.*

  Within its Motion, the Government also requests clarification as to three issues. These are: (1) whether the Court found that Defendant failed to meet his evidentiary burden in showing Paugh's failure to investigate, hire experts, or interview witnesses was constitutionally deficient; (2) whether the Court determined that Paugh was constitutionally deficient at Defendant's sentencing; and (3) whether the Court overruled the Government's objection to new arguments raised by Defendant after his initial motion to vacate.

  As to the first, the short answer is yes—Defendant failed to provide sufficient evidence that Paugh was constitutionally deficient at trial by not investigating, hiring experts, or interviewing witnesses. Defendant's meandering examination of Paugh, along with his failure to develop relevant testimony from experts or others showing what they *would* have testified to at the time of trial, means that Defendant cannot show prejudice as to any Count on these grounds. Rather, the sole ground for relief was Paugh's failure to object to Jury Instruction 16.

  Secondly, the Court did not address Defendant's claim that Paugh was constitutionally deficient at sentencing because that issue was moot. With the Court granting Defendant's Motion as to Counts I and II, Defendant will have to undergo sentencing with a recalculated offense level. Paugh's conduct at Defendant's previous sentencing is wholly immaterial to Defendant's case going forward.[25]

---

[25] Unless, that is, the Tenth Circuit were to reverse this Court's order granting in part Defendant's Motion and remand to this Court for further proceedings.

Finally, the Court acknowledges that the Government raised objections to any new arguments raised by Defendant that arose outside of his initial motion to vacate. However, at the time of that motion Defendant was—in essence, if not yet procedurally—proceeding pro se. And the standard rule in federal court is that pro se pleadings must be liberally construed.[26] The Court concluded that Defendant's allegedly "new" arguments all sufficiently related to issues raised in his initial briefing, at least when liberally construing the issues raised by Defendant. In that sense, the Court did not consider any "new" arguments in reaching its conclusion regarding Defendant's motion to vacate. Rather, the Court's analysis was restricted to addressing the larger issues raised by Defendant in his original motion and developed through briefing, at the evidentiary hearing, and even by this Court's questioning of both the parties during oral argument. The Government's objection was not overruled—it just did not apply.

Furthermore, the Government had the opportunity to respond either in briefing or in oral argument to each of Defendant's arguments which the Court considered in ruling on Defendant's Motion.[27] Thus, the Court is confident the Government has suffered no prejudice from its liberal construction of the issues included in Defendant's motion to vacate.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Reconsideration (Doc. 244) is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Motion for Reconsideration and Clarification (Doc. 247) is **DENIED**.

---

[26] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because Mr. Trackwell appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

[27] *See James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892, 902–903 (D. Kan. 2021) (holding a court *may* disregard arguments raised for the first time in a reply, but if it considers them "it should give the nonmoving party an opportunity to respond" to avoid prejudice).

**IT IS SO ORDERED.**

Dated this 13th day of September, 2023.

                                            */s/ Eric F. Melgren*
                                            ERIC F. MELGREN
                                            CHIEF UNITED STATES DISTRICT JUDGE